## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

ERIC HERMAN, individually and on behalf of
a class of similarly situated individuals,

        *Plaintiff*,

v.

SEMPRIS, LLC, a Delaware limited liability
company, E. MISHAN & SONS, INC., a New
York corporation d/b/a EMSON, INC.,

        *Defendants*.

**CLASS ACTION COMPLAINT
AND JURY DEMAND**

Case No.

      Plaintiff Eric Herman brings this Class Action Complaint against Defendants Sempris,

LLC ("Sempris") and E. Mishan & Sons, Inc. d/b/a Emson, Inc. ("Emson") (hereinafter

collectively "Defendants") on his own behalf, and on behalf of Classes of similarly situated

individuals who were charged without authorization for Sempris Membership Programs.

Plaintiff alleges as follows upon personal knowledge to himself and his own acts and

experiences and, as to all other matters, upon information and belief, including investigation

conducted by his attorneys.

### NATURE OF THE CASE

     **1.**    Defendants work together to charge consumers recurring monthly fees for

"Membership Programs" that purport to offer discounts, coupons, and other money saving deals.

Using the sale of a legitimate product as bait, Defendants acquire consumers' billing information

and then use this information to enroll and charge consumers for memberships.

     2.    The deceptive scheme is perpetuated in the following way: First, after viewing a

television commercial for one of Defendant Emson's products, an interested consumer calls the

number on the screen to order the advertised product. The consumer is then connected to a live operator to complete their order. While on the phone, the operator notifies the consumer that they qualify for a "risk-free" trial of one of Defendant Sempris' Membership Programs and deceptively describes the terms of the trial offer, including that membership can be cancelled at any time by calling Sempris' customer service number. The timing and description of the offer is purposefully misleading, as consumers reasonably believe that the product and services being offered are from the same company and are part of the same transaction.

3.      Regardless of whether the consumer agrees to the offer (and even when a consumer explicitly declines), the consumer is subsequently enrolled in and charged for one of the Sempris Membership Programs.

4.      Furthermore, contrary to the operator's representations, consumers who call and cancel their enrollment in the program continue to be charged.

5.      Working in unity with one another, Defendants have systematically defrauded consumers by enrolling and charging them for membership programs without consent. Each Defendant is jointly and severally liable, and together, Defendants share in the profits generated by their fraudulent scheme.

6.      Plaintiff Herman was one of many injured by Defendants' conduct. Through his Complaint, Plaintiff seeks to put an end to Defendants' unlawful business practices and to recover the monies that have been wrongfully obtained.

**PARTIES**

7.      Plaintiff Eric Herman is a natural person domiciled in the State of Michigan.

8.      Defendant Sempris, LLC, is a marketing services company that operates numerous "Membership Loyalty Programs," including the Budget Savers Membership Program.

Sempris is a corporation incorporated and existing under the laws of the State of Delaware, with its principal place of business located at 11100 Wayzata Boulevard, Suite 680, Minneapolis, Minnesota. It does business throughout the United States, the State of Michigan, and this District. Until early 2011, Defendant Sempris operated under the corporate name Provell, Inc.

9.     Defendant Emson, Inc. manufactures, markets, and sells a wide range of consumer products, including products marketed "As Seen on TV," directly to consumers via television infomercials, websites, and other e-commerce means. Emson also sells its products wholesale to retailers, such as department stores and mass merchandisers. Emson is a corporation incorporated and existing under the laws of the State of New York with its principal place of business at 230 Fifth Avenue, New York, New York. It does business throughout the United States, the State of Michigan, and this District.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2) because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

11.     Venue is proper in this District under 28 U.S.C. § 1391(a) as Plaintiff is a resident of this District and the injury arose here. Venue is additionally proper because Defendants transact significant business in this District, including soliciting consumer business and entering into consumer transactions.

## FACTS COMMON TO ALL COUNTS

**12.**     Defendant Sempris is a marketing company that offers numerous subscription-based, negative-option "Membership Programs" which purport to offer discounts and services,

such as coupons and rebates, to "subscribing" consumers.

13.     However, despite costing membership fees of as much as $24.95 a month, these programs offer little real value and are rarely ever utilized by membership subscribers (as they are unaware that they have even been enrolled). Furthermore, the majority of the coupons, gift cards, and rebates promised to subscribers are never delivered or received.

14.     Despite this fact (or perhaps due to it), Sempris continues to have thousands of subscribers who are deceptively enrolled in Sempris Membership Programs and charged for membership fees.

15.     The Sempris Membership Programs include, but are not limited to: Value Plus, Budget Savers, Cooking in Style, Essentials for Home, Explore USA, FunSource, Homeplay, Pulse, and Vacation Passport. Sempris has also partnered with various merchants to create "Custom" Programs, such as: Glamour in You and Duets (for Frederick's of Hollywood), Chase Ultimate Rewards Plus (for Chase Manhattan Bank), and JC Whitney Buyers Plus (for JC Whitney).

16.     Consumers have complained about each and every one of the Sempris Membership Programs.

**Defendants Jointly Conspire to Defraud Consumers**

**17.**     Enrollment in the Sempris Membership Programs, through Defendant Emson, occurs in the following way: A consumer views a television infomercial promoting one of Emson's products, *i.e.* the Chair Gym or Ab-Roller. Interested, the consumer picks up the phone and dials the listed number to purchase the advertised item.

18.     Once the consumer is connected over the phone, a live operator processes the consumer's order for the advertised product while simultaneously trying to sell a Sempris

Membership Programs. The operator is trained to make an aggressive sales pitch of a "risk-free" or "free" trial of the membership program and offers the caller a variety of gift cards and/or rebates as incentives. The operator further claims that the consumer can cancel the membership at any time, and with no consequence, before the "free trial" period (usually lasting 14 or 30 days) is over.

19.     In reality, the timing and wording of the offer are purposefully designed to obscure material terms, confuse callers with "free" trials and other gifts, and induce consumers to consent to enrollment in a Sempris Membership Program, all while obscuring and/or concealing the fact that the Membership Programs are negative option services that will automatically and perpetually be billed to a consumer's account.

20.     As live operators are paid a commission for each member they enroll (and oftentimes subject to monthly quota requirements), they are further incentivized to misrepresent or omit material terms of the Membership Programs so as to induce enrollment.

21.     Further, consumers who call and cancel their membership continue to be charged repeated membership fees by Sempris (even when the cancellation occurs before the expiration of the trial period).

22.     Emson is aware of Sempris' fraudulent and deceptive business practices, and acts as a conduit for passing along consumer billing information and access to Sempris for its illegal purposes.

23.     Emson purposefully provides Sempris access to consumers attracted by Emson's advertised products and who are lured into providing their billing and personal information to complete their unrelated purchase.

24.     In fact, Defendants are active co-conspirators who have knowingly entered into

an agreement to profit from Sempris' unauthorized charges to consumers' credit and debit accounts, and have designed and jointly implemented a system whereby consumers would be unknowingly or deceptively induced into enrolling in Sempris' Membership Programs.

25.     Defendants are jointly liable, and together, share in the profits generated by their fraudulent scheme.

**Sempris' Documented History of Deceptive Marketing**

**26.**     Previously operating as Provell, Inc., and before that, Damark International, Inc., Sempris' practice of fraudulently enrolling and charging consumers for memberships in its Membership Programs (as well as its propensity for changing its name to evade liability) has been well documented over the past ten years.

27.     Sempris' business practices previously resulted in an investigation and complaint filed against Defendant by the Minnesota Attorney General in 1999, forcing Sempris (then operating as Damark International Inc.) to issue an official Assurance of Discontinuance.[1]

28.     Despite its Assurance of Discontinuance, Defendant simply changed its name to Provell, Inc. and resumed its deceptive business practices—namely, using preacquired information to fraudulently enroll consumers in its Membership Programs.

29.     After operating as Provell, Inc. for the past ten years, and accumulating thousands of consumer complaints under that name, Defendant has changed its business name yet again to Sempris.

30.     Hundreds of consumer complaints about the deceptive nature of Sempris' Budget Savers membership enrollment and charges (spanning the course of several years) can be found throughout consumer protection websites:

---

[1]     Assurance of Discontinuance, *Minnesota ex rel. Hatch v. Damark Int'l, Inc.*, No. C8-99-10638 (Ramsey County Dist. Ct. Dec. 3, 1999).

April 23, 2009: I had never heard of WC *BUDGET SAVERS MNTH until it showed up as an automatic withdrawal from my account… I found out it's a company I NEVER heard of and they say I authorized it. I NEVER authorize automatic withdrawals and I don't even use coupons, why would I request the services of a coupon clipping website. [ ] I believe this may have been triggered by an Internet purchase I made for "Aquabulbs"...

Jan. 21, 2010: My bank account has been debited electronically $24.95 December and January. The debit is described as WC BUDGET SAVERS MN PH. 800-475-1942.  I have no idea what it is about because I have not purchased anything from such company. What should I do next?

Aug. 9, 2011: My wife and I ordered an auto headlight restoration product on the telephone from a TV promotion sale. After doing so were asked If we would be interested in many different other products, to each question we replied NO. The next day I received a courtesy call confirming our order. The representative again tried to sell me an array of items, again the answer was no. In about 10 days we received the Fast Brite item we ordered and our account was drafted 07-22-2011. On 08-09-2011 our account was again drafted by WC *MON BUDGET SAVERS MINNETONKA, MN ATH for $29.95. This draft was not authorized by my wife or myself. The information was obtained through the telephone order for Fast Brite. Please be careful as this is a scam.

Feb. 23, 2012: I bought something from a t.v. ad, swiffer sweeper. They told me I had won a gas card and that for one dollar I could get so much more. At first I thought this is cool, then they asked me for my card number several times. I quickly said forget this, I do not want any of it. The woman told me she would cancel it and I hung up the phone. Now I notice that money is being taken out of my bank account $29.95 every month. I never authorized that nor did I ever get anything for the money they are taking out of my account. I never received anything from them in the mail. I called my bank and I am going to cancel my bank card. This is a scam and they are stealing people's money. This needs to be stopped, it is not right. Unhappy.

## FACTS SPECIFIC TO PLAINTIFF

**31.**     In or around April 2012, Eric Herman viewed a television infomercial for one of Defendant Emson's exercise and fitness products—the Chair Gym.

32.     After viewing the infomercial, Herman picked up the phone and called the number listed on the screen to order the Chair Gym. Herman was then connected with a live customer service representative to place his order.

33.     After hearing that Herman was interested in purchasing the Chair Gym, the customer service representative asked Herman if he would also be interested in enrolling in a Membership Discount Program. The representative claimed that membership in the program could save Herman hundreds of dollars a year on groceries and other products, and that he would only be charged $1 for the trial period. Further, the representative assured Herman that he would receive information in the mail to explain all the benefits and costs of the program, as well as various gift cards and rebates simply for trying out the program. Finally, the representative assured Herman that he could call and cancel his membership at any time.

34.     Despite the representative's offer, Herman told her that he was not interested. In response, the representative informed him that she *could not authorize* the purchase of the Chair Gym without adding the Membership Program.

35.     Because he believed that it was a mandatory requirement for his purchase of the Chair Gym (and a part of the same transaction), Herman ultimately agreed to a "risk-free" trial of the marketed Membership Program.

36.     Absent the representative's statement that it was a mandatory requirement for his purchase, Herman would not have agreed to a "risk-free" trial of the Membership Program. On information and belief, enrollment in a trial membership was not required to purchase the Chair Gym, but instead was a deceptive tactic used by Emson telemarketers to sell Sempris Membership Programs.

37.     Despite the fact that the Membership Program and the Chair Gym were offered by two separate companies (a fact that was never disclosed to Herman), he was only asked to provide his billing information one time.

38.     Immediately after his order, Herman called the toll free number provided by the representative and canceled his membership.

39.     Nevertheless, he received a $29.95 charge to his bank account for the Sempris Budget Savers Membership Program on May 14, 2012.

40.     After seeing the charge on his statement, Herman called the number listed next to the amount to ask why he had been charged. The customer service representative with whom he spoke informed him that there was no record of his prior cancellation. Herman again requested cancellation of his membership, and the representative assured him that his membership was cancelled. The representative, however, refused to provide a confirmation number for the cancellation and ended the call when Herman asked for her name.

**41.**     Herman was not charged the following month. However, two months later on July 17, 2012, another Budget Savers charge for $29.95 appeared on Herman's statement. This time, the charge overdrew Herman's account. As a result, Herman was charged three overdraft fees of $29.00 each, one for the Budget Savers charge, and one for each of the two authorized transactions following. Had it not been for the Budget Savers charge, Herman's account would not have been overdrawn for any of his authorized transactions.

42.     Herman again called Budget Saver's customer service number. The customer service representative who answered again assured Herman that his membership was now cancelled, and promised that he would receive a refund for the July transaction. When Herman asked about a refund of the three overdraft charges, the customer service representative promptly disconnected the call.

43.     Herman never received any printed materials pertaining to his membership enrollment, such as confirmation of enrollment, a membership identification number (necessary

to utilize the program's supposed benefits), or any of the promised gift cards or rebates. Accordingly, Herman was unable to (and never did) utilize any of the program's alleged benefits.

44.     After weeks of waiting for the Chair Gym, Herman received a postcard in the mail stating that the product was not available. Herman subsequently filled out and returned the postcard to cancel his order.

45.     Herman has yet to receive a refund for any of the charges.

## CLASS ALLEGATIONS

**46.**     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class and three Subclasses defined as follows:

**Sempris Class:** All individuals who were enrolled in a Sempris Membership Program following their telephone purchase of an Emson product.

**Michigan SubClass**: All Sempris Class Members who reside in Michigan.

**Debit Card SubClass**: All Sempris Class Members who had monthly fees for Membership Programs debited directly from their bank account by Sempris.

**Opt-Out SubClass**: All Sempris Class Members who contacted Sempris and requested to cancel their enrollment in a Sempris Membership Program, and thereafter were charged by Sempris for a Sempris Membership Program.

The following persons are excluded from the Class and Subclasses: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

47.     **Numerosity:**  The exact number of the members of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendants have deceived thousands of consumers who fall into the definition set forth above. Members of the Classes can be identified through Defendants' records.

48.    **Typicality:**  Plaintiff's claims are typical of the claims of other members of the Classes, as Plaintiff and other members sustained damages arising out of the wrongful conduct of Defendants, based upon the same transactions which were made uniformly with Plaintiff and the public.

49.    **Adequate Representation:**  Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest antagonistic to those of the Classes and Defendants have no defenses unique to Plaintiff.

50.    **Predominance and Superiority:** Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. Even if members of the Classes themselves could sustain such individual litigation, it would not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

51.    **Commonality:** There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect

individual members of the Class. Common questions for the Class include, but are not limited to the following:

      a.   Whether Defendants' conduct alleged herein violates the Michigan Consumer Protection Act, M.C.L § 445.903 *et seq*.;

      b.   Whether Defendants' conduct alleged herein violates 15 U.S.C § 1693e, *et seq*,;

      c.   Whether Defendants' conduct alleged herein constitutes breach of contract;

      d.   Whether Defendants' conduct alleged herein constitutes unjust enrichment;

      e.   Whether Defendants' conduct alleged herein constitutes fraud by omission.

### COUNT I
**Violation of the Michigan Consumer Protection Act**
**(M.C.L § 445.903 *et seq*.)**
**(Individually and on behalf of the Michigan Subclass)**

52.    Plaintiff incorporates by reference the foregoing allegations.

53.    Defendants' wrongful acts, as set forth throughout this Complaint, constitute unfair, unconscionable or deceptive methods, acts or practices in violation of the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.903.

54.    Specifically, Defendants violated § 445.903(a) by "causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services."

55.    By combining the sale of Emson's Chair Gym and Sempris' membership enrollment into one transaction (and having consumers provide their billing information only one time), Defendants caused Plaintiff and the Subclass to believe that both products and services were provided by the same source.

56.    Further, Defendants violated § 445.903(r) by "representing that a consumer will receive goods or services 'free', 'without charge', or words of similar import without clearly and

conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions, terms, or prerequisites to the use or retention of the goods or services advertised."

57.    Defendants represented to Plaintiff and the Subclass that trying out Sempris' Membership Programs would be "risk-free" and that Plaintiff and the Subclass would receive "free" gift cards and/or rebates for doing so. Defendants failed to disclose "with equal prominence" that agreeing to a "free trial" would lead to enrollment in a negative-option membership with recurring monthly fees that would automatically be charged to consumers' accounts.

58.    Defendants also violated § 445.903(s) by "failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."

59.    Defendants failed to reveal that: (1) consumers who provided their billing information for the purchase of the Chair Gym would automatically have that information passed to Sempris for billing membership fees; (2) the Chair Gym and Membership Program were being offered by two separate companies; and (3) the true cost of agreeing to a "free trial" of the membership program (a recurring monthly fee that would automatically (and perpetually) be billed unless the consumer affirmatively called to cancel).

60.    These facts were material because they were likely to influence a consumer's decision on whether or not to provide their personal billing information to Defendants or agree to a "free trial" of a Membership Program.

61.    Plaintiff and the Subclass were deceived and/or mislead by Defendants' omission of these material facts, and suffered harm in the form of recurring membership fees charged by Sempris.

62.    Defendants further violated § 445.903(cc) by "failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."

63.    Defendants failed to reveal the complete terms and costs of the membership, including the fact that it was a negative option program that would charge the consumer continuously unless cancelled. Rather, Defendants purposefully emphasized that the trial would be "risk-free" or "free," and that the consumer would receive "free" gift cards and other incentives for agreeing to membership. The fact that accepting membership would lead to recurring monthly charges was especially material to the transaction in light of the representations that membership would be "free" or come with "free" items.

64.    Finally, Defendants violated § 445.903(bb) by "making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is."

65.    Defendants falsely represented to Plaintiff that he would be unable to purchase the Chair Gym without agreeing to try the Membership Program. This statement of fact was material to the transaction because it was a deciding factor in Plaintiff's decision to consent to the "free trial." Further, this statement represented or suggested the state of affairs to be something other than what it actually was (that trying the membership program was a pre-requisite for purchase of the Chair Gym).

66.     As a direct and proximate result of the unfair, unconscionable, or deceptive practices of Defendants as set forth above, Plaintiff and the Subclass have suffered actual damages in the form of recurring monthly fees charged for the Sempris Membership Programs.

67.     Plaintiff and the Subclass seek actual damages for Defendants' unfair and unlawful practices pursuant to M.C.L. § 445.911(3) and an order enjoining Defendants from engaging in future unfair and unlawful practices pursuant to M.C.L. § 445.911(2), plus interest and attorneys' fees in an amount to be determined at trial.

**COUNT II**
**Violations of the Electronic Funds Transfer Act**
**(15 U.S.C § 1693e)**
**(Individually and on behalf of the Debit Card Subclass)**

**68.**     Plaintiff incorporates by reference the foregoing allegations.

69.     As described herein, Defendants initiated electronic transfers of funds for unauthorized membership fees from the bank accounts of Plaintiff and the Debit Card Subclass on a recurring basis, at substantially regular intervals, without first obtaining written authorization from them or providing them with a copy of any such purported authorization.

70.     Defendants further continued to transfer funds after Plaintiff and members of the Subclass expressly cancelled membership.

71.     Therefore, Defendants have violated 15 U.S.C. § 1693e.

72.     Plaintiff and the other members of the Subclass have suffered damages as a result of Defendants violations of 15 U.S.C. § 1693e.

73.     Accordingly, under 15 U.S.C. § 1693m, Plaintiff and the other members of the Subclass seek actual damages, statutory damages, reasonable costs and attorneys' fees, and an injunction against further violations.

<u>COUNT III</u>
**Fraud by Omission**
**(Individually and on behalf of the Class)**

**74.**     Plaintiff incorporates by reference the foregoing allegations.

75.     Based on Defendants' material omissions, Plaintiff and members of the Class did not reasonably expect to be charged by Sempris for its Membership Programs without authorization and after cancellation of their memberships.

76.     Defendants knew that they did not have informed and explicit consent to charge Plaintiff and members of the Class for Sempris' Membership Programs.

77.     Defendants concealed from and failed to disclose to Plaintiff and Class Members that Sempris would charge them for its membership program without consent and after cancellation.

78.     Defendants were under a duty to disclose to Plaintiff and the other members of the Class that Sempris intended to charge their accounts for its Membership Programs (and would continue to do so even after cancellation) because: (1) Defendants were in a superior position to know the true state of facts about their possession and sharing of Plaintiff's and Class members' credit and bankcard information; (2) Defendants were in a superior position to know the terms of Sempris' Membership Programs, including the fact that Sempris continues to bill accounts after cancellation; (3) Plaintiff and the Class members could not reasonably have been expected to learn or discover that Sempris was in possession of their account information and that Sempris intended to place charges on those accounts without authorization and after cancellation; and (4) Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover that Sempris was in possession of their account

information and that Sempris intended to place charges on those accounts without authorization and after cancellation.

79.     The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to allow Defendants access to their billing information and whether to agree to a free trial of any of Sempris' Membership Programs.

80.     Plaintiff and the Class justifiably relied on the omissions of Defendants to their detriment.

81.     The detriment is evident from the unauthorized charges placed on Plaintiff and Class members' accounts and the monies lost.

82.     As a direct and proximate result of Defendants' misconduct, Plaintiff and the Class have suffered and will continue to suffer actual damages in the form of monies taken by Sempris.

**COUNT IV**
**Breach of Contract**
**(As against Emson)**
**(Individually and on behalf of the Class)**

**83.**     Plaintiff incorporates by reference the foregoing allegations.

84.     Defendant Emson on the one hand, and Plaintiff and members of the Class, on the other, entered into valid and enforceable contracts whereby those Class members provided and Emson accepted payments in exchange for goods marketed and sold by Emson. In order to facilitate their purchases, Plaintiff and the Class provided Emson with access to their billing information.

85.     A material term of the contract entered into by Plaintiff and the Class members with Emson required that Emson only share Class members' billing information with those

expressly authorized to receive it. Likewise, a material term of the contract required Emson to only bill Plaintiff and the Class for charges that they authorized

86.     Plaintiff and members of the Class did not consent to Emson releasing their billing information to Sempris, nor did they consent to any additional charges made by or on behalf of Sempris.

87.     Plaintiff and the other members of the Class did not contract with Emson to transfer their billing information for the purpose of allowing a third party to charge their accounts.

88.     As a result of its unlawful conduct alleged herein, Emson materially breached the terms of its merchant contracts with Plaintiff and the other members of the Class.

89.     Plaintiff and the other members of the Class have suffered damages in the form of monies lost as a direct result of Emson's acts and practices.

90.     Plaintiff, individually and on behalf of the Class, seeks damages for Emson's breach of contract, as well as interest, reasonable attorneys' fees, expenses, and costs to the extent allowable.

## COUNT V
### Unjust Enrichment (*in the alternative to breach of contract*)
### (As against Emson)
### (Individually and on behalf of the Class)

**91.**     Plaintiff incorporates by reference the foregoing allegations, excluding paragraphs 84 through 91.

92.     Defendant Emson knowingly received a monetary benefit from Plaintiff and the Class in the form of fees, revenue share, or other value given by Sempris when Emson wrongfully permitted Sempris to obtain the Class members' contact and billing information, which Sempris then used to charge recurring monthly fees from members of the Class.

93.    Emson appreciates or has knowledge of such benefits.

94.    Emson has no valid basis to accept benefits that are derived from Sempris charging Class members' for unauthorized membership fees.

95.    Under principles of equity and good conscience, Emson should not be permitted to retain the benefits it wrongfully received from Plaintiff and the other members of the Class.

96.    Plaintiff, individually and on behalf of the Class, seeks restitution of all monies Emson has unjustly received as a result of their conduct alleged herein, as well as interest, reasonable attorneys' fees, expenses, and costs to the extent allowable, as well as all other relief the Court deems necessary to make them whole.

**COUNT VI**
**Unjust Enrichment**
**(As against Sempris)**
**(Individually and on behalf of the Class)**

**97.**    Plaintiff incorporates by reference the foregoing allegations.

98.    Sempris, knowingly and without authorization, charged the credit and debit accounts of Plaintiff and the other members of the Class for its Membership Programs.

99.    As a result, and despite having no valid or legal basis to do so, Sempris unjustly received and continues to receive a monetary benefit in the form of membership fees charged to those consumers who have not provided their consent or authorization to be charged.

100.    Sempris appreciates and/or has knowledge of those benefits.

101.    Under principles of equity and good conscience, Sempris should not be permitted to retain the money belonging to Plaintiff and the other members of the Class that it unjustly received as a result of its unlawful actions.

102.    Plaintiff, individually and on behalf of the Class, seeks restitution for Sempris'
unlawful conduct, as well as, to the extent allowable, interest, costs and reasonable attorneys'
fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Eric Herman, individually and on behalf of the Classes, requests
that the Court enter an Order providing for the following relief:

A.    Certify this case as a class action on behalf of the Classes defined above, appoint
      Plaintiff as Class Representative, and appoint his counsel as Class Counsel;

B.    Declare that Defendants' actions, as set out above, violate M.C.L § 445.903 *et
      seq*., 15 U.S.C § 1693e, *et seq*,; and constitute breach of contract, unjust
      enrichment, and fraud by omission;

C.    Award all economic, monetary, actual, consequential, statutory and compensatory
      damages caused by Defendants' conduct, and if the conduct is proven to be
      willful, award Plaintiff and the Classes exemplary damages;

D.    Award restitution against Defendants for all money to which Plaintiff and the
      Classes are entitled in equity;

E.    Award Plaintiff and the Classes their reasonable litigation expenses and
      attorneys' fees;

F.    Award Plaintiff and the Classes pre- and post-judgment interest, to the extent
      allowable;

G.    Enter injunctive and/or declaratory relief as is necessary to protect the interests of
      Plaintiff and the Classes; and

H.    Award such other and further relief as equity and justice may require.

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.


Respectfully submitted,


Dated:  January 7, 2013                    **ERIC HERMAN**, individually and on behalf of
                                           all others similarly situated,

                                           By: ___/s/  Barry Conybeare_____
                                                   One of Plaintiff's Attorneys



                    Barry Conybeare
                    CONYBEARE LAW OFFICES, P.C.
                    519 Main Street
                    St. Joseph, MI 49085
                    barry@conybearelaw.com
                    (269) 983-0561

                    Jay Edelson (*Admitted*)
                    jedelson@edelson.com
                    Rafey S. Balabanian*
                    rbalabanian@edelson.com
                    Christopher L. Dore*
                    cdore@edelson.com
                    Benjamin H. Richman*
                    brichman@edelson.com
                    Alicia Hwang*
                    ahwang@edelson.com
                    EDELSON MCGUIRE LLC
                    350 North LaSalle Street, Suite 1300
                    Chicago, Illinois 60654
                    Telephone: (312) 589-6370

                    *Petition for Admission to be filed*